Hans W. Herb (SBN 136018)
LAW OFFICE OF HANS W. HERB
P.O. Box 970
Santa Rosa, CA 95402
Telephone: (707) 576-0757
E-mail: hans@tankman.com

Craig A. Brandt (SBN 133905)
LAW OFFICE OF CRAIG A. BRANDT
5354 James Avenue
Oakland, CA 94618
Telephone: (510) 601-1309
E-mail: craigabrandt@att.net

Attorneys for Plaintiff EDEN ENVIRONMENTAL
CITIZEN'S GROUP, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF COLUSA, a California Municipal Entity, MICHAEL AZEVEDO, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:19-cv-00529-WBS-DB<br><br>**STIPULATION TO DISMISS ENTIRE ACTION AGAINST ALL DEFENDANTS WITH PREJUDICE; [PROPOSED] ORDER GRANTING DISMISSAL WITH PREJUDICE**<br><br>**FRCP 41(a)(2)** |

Plaintiff EDEN ENVIRONMENTAL CITIZEN'S GROUP, LLC ("EDEN") and

Defendants COUNTY OF COLUSA and MICHAEL AZEVEDO ("Defendants"), by and

through their attorneys of record, hereby enter into this Stipulation to Dismiss Plaintiff's

Complaint and all claims against Defendants with prejudice.

    WHEREAS, Plaintiff and Defendants (the "Parties") have entered into a settlement

agreement that achieves a full and final settlement of all Plaintiff's claims against Defendants as

set forth in the Complaint filed in this matter on March 26, 2019 (Docket No. 1).

WHEREAS, on June 14, 2019, the Parties filed a Notice of Settlement (Docket No. 9), notifying the Court that the Parties had reached a full settlement to resolve all outstanding issues in this action ("Settlement Agreement"), a fully executed copy of which is attached hereto as **Exhibit A**, and Plaintiffs served copies of the Settlement Agreement on the Department of Justice ("DOJ") for a mandatory 45-day review period under 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5 (*see* Docket No. 9).

WHEREAS, the Parties' Notice of Settlement also specifies that upon the expiration of DOJ's review period, if there is no objection lodged by DOJ, the Settling Parties will stipulate to and request an order from this Court (1) dismissing with prejudice Eden's claims as to Defendants, and (2) concurrently retaining jurisdiction over this matter for purposes of dispute resolution and enforcement of the Settlement Agreement.

WHEREAS, Section II.3.a. of the Settlement Agreement further states that in the event that DOJ objects to the Settlement Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the DOJ within thirty (30) days.

WHEREAS, on July 22, 2019, DOJ notified the Court and the Parties that while DOJ was "not in a position, at this time, to advise the Court" as to whether the Parties' Settlement Agreement "is consistent with the purposes of the Clean Water Act[,]" DOJ did not file a formal objection to the Settlement Agreement as contemplated in the Parties' Notice of Settlement (Docket No. 1) and under Section II.3.a. of the Settlement Agreement (*see* Docket No. 11).

WHEREAS, Section II.4 of the Settlement Agreement states in relevant part that within seven (7) days of the expiration of the 45-day agency review period or receipt of DOJ's correspondence (and DOJ does not object to the Settlement Agreement as described under Section II.3.a. of the Settlement Agreement), Plaintiff shall file with the Court a Stipulation and Proposed Order, signed by both Parties, providing that:

1. The Complaint and all claims shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

2. The Court shall retain and have jurisdiction over the Parties with respect to disputes arising under the Settlement Agreement.

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the Parties that (1) Plaintiff's Complaint and all claims against Defendants shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2); (2) the Parties respectfully request an order from this Court dismissing such claims with prejudice, with each side to bear their own attorney fees and costs, except as provided for by the terms of the attached Settlement Agreement; and (3) the Parties further request that this Court retain jurisdiction over the Parties with respect to disputes arising under the terms of the attached Settlement Agreement.

DATED:  August 1, 2019                    LAW OFFICE OF HANS W. HERB


                                          By: _/s/ Hans W. Herb_____
                                             HANS W. HERB
                                             Attorney for Plaintiff
                                             Eden Environmental Citizen's Group

DATED:  August 1, 2019                    DOWNEY BRAND LLP


                                          By: _/s/ Nicole E. Granquist_____
                                             NICOLE E. GRANQUIST
                                          Attorney for Defendants
                                          County of Colusa and Michael Azevedo

STIPULATION TO DISMISS; [PROPOSED] ORDER

# ORDER

Good cause appearing, and the parties having stipulated and agreed, IT IS HEREBY ORDERED as follows:

The Complaint filed in this matter by Plaintiff Eden Environmental Citizen's Group, LLC and all claims against Defendants County of Colusa and Michael Azevedo are hereby dismissed in their entirety, with prejudice. Each party is to bear their own attorney fees and costs, except as provided for in the Settlement Agreement executed by the Parties on June 14, 2019, a copy of which is attached hereto as **Exhibit A** and incorporated herein by reference.

The Court shall retain and have jurisdiction over the Parties with respect to disputes arising under the Settlement Agreement through September 15, 2021, the Termination Date of the Settlement Agreement. The Parties are to notify the Court if the Agreement terminates early pursuant to Section I.2 of the Settlement Agreement.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated:  August 2, 2019

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

**SETTLEMENT AGREEMENT**

The following Settlement Agreement ("Agreement") is entered into by and between Plaintiff Eden Environmental Citizen's Group ("Eden" or Plaintiff"), and Defendants County of Colusa (individually "County" or "Defendant") and Michael Azevedo (individually "Azevedo") (the County and Azevedo are collectively referred to herein as "Defendants;" Plaintiff and Defendants are collectively referred to herein as "Parties" or individually as a "Party").

**WHEREAS,** Eden is an environmental citizen's group organized under the laws of the State of California, dedicated to protect, enhance, and assist in the restoration of all rivers, creeks, streams, wetlands, vernal pools, and tributaries of California, and the United States;

**WHEREAS**, the County is a political subdivision of the State of California under the laws of California, which owns and/or operates the Stonyford Landfill located at 5160 Lodoga Stonyford Road, Stonyford, California 95979 (the "Facility"). The 6.3-acre Facility includes the landfill (4.0 acres), monitoring systems, landfill gas and storm water controls including an on-site sedimentation basin, a "borrow area" where dirt is taken and used to cover Municipal Solid Waste ("MSW") that is placed in the landfill, a former drop-off area for recyclable material, access roads, and a tipping area where MSW is dropped-off and covered with a tarp before the MSW is placed and dirt from the "borrow area" is used to cover the MSW;

**WHEREAS**, Michael Azevedo is acting in his official capacity as the Assistant Director of the County Public Works Department;

**WHEREAS**, the County collects and discharges run-on and storm water associated with industrial activity from the landfill through a single storm water discharge outfall located northeast of the onsite settling pond. A site map of the Facility is provided as **Exhibit A** and incorporated herein by reference. The Facility's receiving water is Stony Creek;

**WHEREAS**, these storm water discharges associated with industrial activity are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, State Water Resources Control Board ("State Board") Water Quality Order No. 2014-0057-DWQ (hereinafter "General Permit" or "2015 Permit"); and, prior to July 1, 2015, were regulated by Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ) ("1997 Permit"), each

of which was issued pursuant to Section 402(p) of the Clean Water Act (the "Act" at 33 U.S.C. §§ 1251, *et seq.*), 33 U.S.C. § 1342(p). The Facility is covered under the General Permit under Waste Discharger Identification number ("WDID") 5S061005372;

**WHEREAS**, on or about January 23, 2019, Eden provided notice of the Defendants' alleged violations of the Act ("Notice Letter"), and of its intention to file suit against CSPA to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive Director of the State Board; the Executive Officer of the Regional Water Quality Control Board, Central Valley Region ("Regional Board"); and to the County, as required by the Act, 33 U.S.C. section 1365(b)(1)(A) (a true and correct copy of Eden's Notice Letter is attached as **Exhibit B** and incorporated herein by reference);

**WHEREAS**, on or about March 26, 2019, Eden filed a Complaint for Declaratory and Injunctive Relief and Civil Penalties ("Complaint") in the U.S. District Court, Eastern District of California ("Eastern District Court"), *Eden Environmental Citizen's Group LLC v. County of Colusa, et al.,* Case 2:19-cv-00529-WBS-DB;

**WHEREAS**, the Defendants deny the occurrence of the violations alleged in the Notice Letter and the Complaint, and maintains that there are no "ongoing and continuous" violations of the General Permit or the Act;

**WHEREAS**, the Parties agree that it is in their mutual interest to resolve the Clean Water Act matter as to all entities and persons named in the Notice Letter and Complaint without litigation and enter into this Settlement Agreement ("Agreement"); and

**WHEREAS**, for purposes of this Agreement only, the Parties stipulate that venue is proper in the Eastern District Court and that the Defendants do not contest the exercise of jurisdiction by the Eastern District Court in the future, pursuant to Paragraph 4.b of this Agreement;

**NOW THEREFORE IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES AS FOLLOWS:**

**I.      EFFECTIVE DATE AND TERM OF AGREEMENT**

**1.      Effective Date.** The "Effective Date" shall mean the date of the Order entering the stipulated dismissal with prejudice, retaining jurisdiction for the Term of this Settlement Agreement as

described in Paragraph 4 of this Agreement.

2. **Term.** The Term of this Agreement shall run from the Effective Date until September 15, 2021, the date a Notice of Termination ("NOT") is submitted to the State Board for the Facility, or when the County has received a Notice of Non-Applicability ("NONA") or No Exposure Certification ("NEC") coverage and informed Eden in writing that NONA or NEC coverage has been obtained for the Facility, whichever occurs first. ("Termination Date").

## II. COMMITMENTS OF EDEN

3. **Notice of Settlement and Statutory Agency Review.**

Within five (5) business days of the mutual execution of this Agreement, Eden shall do all of the following:

a. Submit this Agreement to the United States Department of Justice ("DOJ") for the statutory 45-day agency review period set forth in 33 U.S.C. §1365(c). In the event that the DOJ objects to this Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the DOJ within thirty (30) days.

b. Submit a Notice of Settlement to the Eastern District Court.

4. **Case Dismissal**. Within seven (7) days of the expiration of the 45-day agency review period described in Paragraph 3.a., or receipt of DOJ's correspondence, whichever is earlier, Eden shall file with the Court a Stipulation and proposed Order, signed by both Parties, providing that:

a. The Complaint and all claims against the County shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

b. The Court shall retain and have jurisdiction over the Parties with respect to disputes arising under this Agreement, which shall be attached thereto and fully incorporated by reference, through the Termination Date. Nothing in this Agreement shall be construed as a waiver of any Party's right to appeal from an order that arises from a motion to enforce the terms of this Agreement.

## III. COMMITMENTS OF COUNTY

5. **Compliance with General Permit and Clean Water Act**. Throughout the Term of this Agreement, the County shall operate the Facility in compliance with the requirements of the operative General Permit and the Act, subject to any defenses available under the law. The County shall have the

right, in its sole discretion, to determine (i) which persons shall perform any work described herein, including County employees or third-party contractors; and (ii) the scope and technical details of, and manner to implement, any such work.

6.      **Third Party Consultant.**  The County shall hire a third party Qualified Industrial Storm Water Practitioner ("QISP"), as that term is defined in the General Permit, or an engineer of its choice to conduct a site compliance evaluation, which shall include review the Facility's SWPPP, on-site best management practices ("BMPs"), and the monitoring program.  The County shall provide Eden with the documented results of the site compliance evaluation, if these results are not uploaded to the SMARTs system.  Eden will accept Exceedance Response Reports or Annual Evaluation Reports for compliance with this Section.

7.      **Training.**  In 2019 and 2020, the County will conduct training for its storm water personnel on storm water monitoring and reporting, BMPs, and the General Permit. The County will document such training and provide documentation of the training to Eden upon request.

8.      **Storm Water Sample Collection and Analysis.** Between July 1, 2019-June 30, 2020 and July 1, 2020 – June 30, 2021, the County shall collect and analyze storm water samples from the Facility, from Qualifying Storm Events ("QSEs") as defined in the General Permit, at the times and frequencies required by the General Permit, provided sufficient precipitation exists to create sufficient QSEs at the discharge location identified in the Facility SWPPP.  The County shall ensure that the collection, preservation, and handling of these storm water samples are in accordance with *General Permit Attachment H, Storm Water Sample Collection and Handling Instructions*.  For each sample obtained, the County shall adhere to all necessary preservation methods and holding time limits for the subject constituents. The samples shall be analyzed by a laboratory accredited by the State of California. Analytical methods used by the laboratory shall comply with General Permit requirements in regards to both test method and detection limit. *See* General Permit, Table 2, at 43.  The County shall upload to SMARTS the QSE sample analyses received from the analytical laboratory within thirty (30) days of receipt.

9.      **Mitigation of Potential Exceedances**. In the event that the sample analyses (laboratory reports) of the County's storm water samples referred to in Paragraph 7 above indicate results for the tested parameters that exceed either the instantaneous or annual Numeric Action Levels ("NAL") levels

as indicated in Table 2 of, and interpreted as prescribed under, the General Permit, the County agrees to work with its designated QISP to review the County's housekeeping practices and BMPs and, if necessary, revise the Facility SWPPP in order to reduce its tested pollutant parameters, and to provide training and consultation to achieve that objective.

**10.    Inspections During the Term of this Agreement**. The County shall permit representatives of Eden to perform one (1) physical inspection of the Facility during the Term of this Agreement. This inspection shall be performed by Eden's counsel and consultants and may include sampling, photographing, and/or videotaping (Eden agrees photographing and videotaping will be keep confidential, except as necessary for enforcement or dispute resolution under this Agreement) and Eden shall provide the County with a copy of all sampling reports, photographs, and/or video. The County is entitled to obtain a split sample or take a separate sample at the same time and location if any sample is taken by Eden during the visit.  Eden shall provide at least two-weeks advance notice of such physical inspection, except that the County shall have the right to deny access if circumstances would make the inspection unduly burdensome and pose significant interference with business operations or any party/attorney, or the safety of individuals. In such case, the County shall specify at least three (3) dates within the two (2) weeks thereafter upon which a physical inspection by Eden may proceed.

**11.    Submission of Additional Reports.**  During the life of this Agreement, to the extent that annual or other monitoring reports described further below are not otherwise uploaded to, and made available on the State Board's SMARTS database, the County agrees to provide Eden with a copy of any reports concerning industrial storm water matters addressed in this Agreement.  The County may furnish copies of any such reports to Eden in either hard copy or digital form.

**IV.    MITIGATION, COMPLIANCE MONITORING AND FEES AND COSTS**

**12.    Mitigation Payment.** As mitigation of the Clean Water Act violations alleged in Eden's Complaint, the County agrees to pay the sum of two thousand dollars ($2,000.00) to River Partners (https://www.riverpartners.org/) and mailed via certified mail or overnight delivery to John Carlon, President, River Partners, 580 Vallombrosa Avenue, Chico, Ca 95926. The Mitigation Payment shall be made within thirty (30) days of the Effective Date, and the County shall concurrently provide Eden with a copy of such payment.  No funds from such payment shall be used by Eden.

**13.    Reimbursement of Fees & Costs**. The County agrees to reimburse Eden in the amount of Eighteen Thousand Dollars ($18,000) to defray Eden's reasonable investigative, expert, consultant, and attorneys' fees and costs, and all other costs incurred as a result of investigating the activities at the Facility, preparing the Notice, and negotiating a resolution of this action in the public interest. Such payment shall be made payable to "Craig A. Brandt attorney trust fund" and remitted to the firm within ten (10) calendar days of the Effective Date, delivered to: Craig A. Brandt, Attorney at Law, 5354 James Avenue, Oakland, California, 94618; (510) 601-1309; email:  craigabrandt@att.net.   Provision of the aforementioned funds shall constitute full and final payment for all of Eden's attorneys' and expert's fees and costs that have or could have been claimed in connection with Eden's allegations in the Notice Letter and/or Complaint and/or under any state or federal law.

**14.    Compliance Monitoring.** The County shall pay Four Thousand Dollars ($4,000) to fund Eden's costs of monitoring, overseeing and enforcing the County's commitments to Eden under this Agreement (excepting any future judicial enforcement as prescribed in Paragraph 15), including participating in any potential changes to compliance requirements herein. Such payment shall be made payable to "Craig A. Brandt attorney trust fund" and remitted to the firm within thirty (30) calendar days of the Effective Date, delivered to: Craig A. Brandt, Attorney at Law, 5354 James Avenue, Oakland, California, 94618.

**V.    DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT AGREEMENT**

**15.**    If a dispute under this Agreement arises, or any Party believes that noncompliance with this Agreement has occurred, the Parties shall meet and confer within seven (7) calendar days of receiving written notification from the other Party of a request for a meeting to determine whether a breach has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the Parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) calendar days have passed after the meet-and-confer occurred or should have occurred, any Party shall be entitled to all rights and remedies under the law, including filing a motion with the Eastern District Court. The Parties shall be entitled to seek fees and costs incurred in any such motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in the then-applicable federal Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure, and

applicable case law interpreting such provisions.

**16.** **Eden's Waiver and Release**. Upon the Effective Date of this Agreement, Eden, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Defendants and their officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives, including those named in the Notice Letter, (each a "Released Party") from, and waives all claims which arise from or pertain to the Notice Letter and Complaint, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed, for the alleged failure of Defendants to comply with federal and state law, including the federal Clean Water Act (33 U.S.C. sections 1251, *et seq*.), at the Facility, up to the Termination Date with the exception of matters addressed in Paragraph 15.

**17.** **Defendants' Waiver and Release**. Defendants, on their own behalf and on behalf of any Released Party under its control, releases Eden (and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of its successors and assigns, and its agents, attorneys, and other representative) from, and waives all claims which arise from or pertain to the Notice Letter and Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to the Notice Letter and Complaint, with the exception of matters addressed in Paragraph 15.

**18.** For any other claims against each other, known or unknown, suspected or unsuspected, and each Party expressly waives and relinquishes any rights and benefits which they have or may have up to and including the Effective Date of this Agreement under Section 1542 of the Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

1562084.1

The Parties acknowledge that each has specifically reviewed with its attorney the meaning and effect of the release set forth herein, the language of California Civil Code Section 1542, and the waiver contained herein.  The Parties acknowledge that their attorneys have fully explained the impact of these provisions, and the Parties knowingly accept the risks associated with these provisions.

**19.     Eden's Covenant Not to Sue**. Except for the enforcement of this Agreement, beginning on the Effective Date and terminating on the Termination Date, Eden agrees that neither Eden, its officers, executive staff, members of its governing board nor any organization under the control of Eden, its officers, executive staff, or members of its governing board, will serve any 60-day Notice Letter or file any lawsuit against the Defendants seeking relief for claims which arise from or pertain to the Facility, the Notice Letter and/or the Complaint, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum, incurred or claimed or which could have been claimed, regarding the alleged failure of Defendants to comply with the federal Clean Water Act (33 U.S.C. sections 1251, *et seq*.), or any other federal or state law, at the Facility. Any such 60-day Notice Letter or lawsuit filed by Eden after the Termination Date shall not include any such claims for such actions up to and including the Termination Date.  Eden further agrees that it shall not initiate or support such lawsuits against Defendants, their affiliates, past and present employees, operators, officers, directors, officials, consultants, attorneys, members, principals, agents and representatives, predecessors, successors, or assigns brought by other groups or individuals by providing financial assistance, personnel time, or any other affirmative actions. The Parties acknowledge and agree that this Paragraph shall survive the termination of this Agreement, whether by satisfaction of the terms and conditions hereof or by operation of law.

**VI.  MISCELLANEOUS PROVISIONS**

**20.**     The Parties enter into this Agreement for the purpose of avoiding prolonged and costly litigation. Nothing in this Agreement shall be construed as, and Defendants expressly do not intend to imply, an admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Agreement constitute or be construed as an admission by Defendants of any fact, finding, conclusion, issue of law, or violation of law. However, this paragraph shall not diminish or otherwise

8

affect the obligation, responsibilities, and duties of the Parties under this Agreement.

21.     The terms of this Agreement shall be binding on all parties and their employees, officers, agents, divisions, subsidiaries, parent corporations, or affiliates.

22.     The Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document. An executed copy of this Agreement shall be valid as an original.

23.     In the event that any one of the provisions of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

24.     The language in all parts of this Agreement, unless otherwise stated, shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial Storm Water Permit, the Clean Water Act, or specifically herein. The captions and Paragraph headings used in this Agreement are for reference only and shall not affect the construction of this Agreement. The undersigned are authorized to execute this Agreement on behalf of their respective Parties and have read, understood, and agreed to be bound by all of the terms and conditions of this Agreement.

25.     All agreements, covenants, representations, and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Agreement are contained herein. This Agreement and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Agreement, unless otherwise expressly provided for therein.

26.     **Notices**. Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to Eden pursuant to this Agreement shall be hand-delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

> Aiden Sanchez
> Eden Environmental Citizen's Group
> 2151 Salvio Street, #A2-319
> Concord, CA 94520
> Edenenvcitizens@gmail.com

1562084.1

With copies sent to:

        Hans W. Herb
        LAW OFFICES OF HANS W. HERB
        P.O. Box 970
        Santa Rosa, CA 95402
        hans@tankman.com

Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to Defendants pursuant to this Agreement shall be sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

        Marcos Kropf
        County Counsel
        County of Colusa
        1213 Market Street
        Colusa, CA 95932
        MKropf@CountyofColusa.com

With copies sent to:

        Nicole E. Granquist
        Downey Brand LLP
        621 Capitol Mall, 18th Floor
        Sacramento, CA 95814
        ngranquist@downeybrand.com

Each Party shall promptly notify the other of any change in the above-listed contact information.

**27.**    Signatures of the Parties transmitted by facsimile or email shall be deemed binding.

**28.**    No Party shall be considered to be in noncompliance with any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any circumstances beyond the Party's control, including, without limitation, any act of God, war, fire, earthquake, flood, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100-year/24-hour storm event, or inability to pay. Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid and which by exercise of due diligence has been unable to overcome, the Force Majeure.

1562084.1

29.     The Parties have negotiated this Agreement, and agree that it shall not be construed for or against any Party preparing it, but shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

The Parties hereto enter into this Agreement on the terms set forth herein.

Dated:  June 13, 2019                    By: _____
                                             Aiden J. Sanchez
                                             Managing Member, Eden


Dated: _____, 2019               By: _____
                                             Marcos Kropf, County Counsel
                                             County of Colusa

Dated: _____, 2019               By: _____
                                             Michael Azevedo, Asst Director
                                             County of Colusa Public Works


APPROVED AS TO FORM


Dated: June 13, 2019                     By: _____
                                             Hans W. Herb
                                             Attorneys for Plaintiff


DOWNEY BRAND LLP


Dated: 6/13_____, 2019                 By: _____
                                             Nicole E. Granquist
                                             Attorneys for Defendants

11

15620841

29.     The Parties have negotiated this Agreement, and agree that it shall not be construed for or against any Party preparing it, but shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty and ambiguity shall not be interpreted against any one party.

The Parties hereto enter into this Agreement on the terms set forth herein.

Dated:  June 13, 2019                              By: _____
                                                              Aiden J. Sanchez
                                                              Managing Member, Eden

Dated: 6/14_____, 2019                By: _____
                                                              Marcos Kropf, County Counsel
                                                              County of Colusa

Dated: 6 14_____, 2019                By: _____
                                                              Michael Azevedo, Asst Director
                                                              County of Colusa Public Works

APPROVED AS TO FORM

Dated: June 13, 2019                             By: _____
                                                              Hans W. Herb
                                                              Attorneys for Plaintiff

DOWNEY BRAND LLP

Dated: _____, 2019                By: _____
                                                              Nicole E. Granquist
                                                              Attorneys for Defendants

1562084.1



EXHIBIT "A"

0  150'  300'

SCALE IS IN FEET,
BAR IS ONE INCH ON
ORIGINAL DRAWING.
IF NOT ONE INCH ON
THIS SHEET, ADJUST
ACCORDINGLY.

LEGEND

MW-4  MONITORING WELL LOCATION
       IDENTIFICATION NUMBER

S-1   STORMWATER
      SAMPLING LOCATION &
      IDENTIFICATION NUMBER

      SEDIMENT POND

V-2   APPROXIMATE LANDFILL GAS
      VENT LOCATION & ID

SGP-3 APPROXIMATE LANDFILL SOIL
      GAS PROBE LOCATION & ID

      STORMWATER FLOW ARROW

COLUSA COUNTY
STONYFORD LANDFILL

SITE SKETCH
SAMPLING LOCATIONS

FIGURE
2

DATE:
MAR 2019

JOB NO:
1081

H&A  Haling & Associates

LOCKED GATE

STONYFORD LANDFILL
PROPERTY BOUNDARY
APN 10-250-020

LODOGA-STONYFORD ROAD

SGP-1

MW-4

BORROW AREA

MW-3

SGP-2  MW-5

MW-6

S-2

SEDIMENT
POND

SGP-3

V-1  V-2
     V-3
V-6
V-5  V-4

S-1

MW-1A

SGP-4

MW-1B

HAZMAT CONTAINER

OFFICE

CHEMICAL
TOILETS

ACTIVE LANDFILL

FENCE LINE

FORMER WHITE GOODS AND SCRAP
METAL DROP-OFF LOCATIONS. NOTE:
THESE MATERIALS ARE NO LONGER
ACCEPTED AS OF 03/18/2019



**EDEN**

*Eden Environmental Citizen's Group*

January 22, 2019

<u>Via US Mail, Certified</u>

Mike Azevedo
Colusa County Stonyford Landfill
2 Miles South of Stonyford
Colusa, CA 95932

Scott Lanphier
Colusa County Public Works
1215 Market Street
Colusa, CA 95932

Marcos Kropf
Colusa County Counsel
1213 Market Street
Colusa, CA 95932

**Re:      60-Day Notice of Violations and Intent to File Suit Under the Federal Water
        Pollution Control Act ("Clean Water Act")**

To Officers, Directors, Operators, Property Owners and/or Facility Managers of Colusa County
Stonyford Landfill:

        I am writing on behalf of Eden Environmental Citizen's Group ("EDEN") to give legal
notice that EDEN intends to file a civil action against Colusa County Stonyford Landfill
("Discharger") for violations of the Federal Clean Water Act ("CWA" or "Act") 33 U.S.C. §
1251 *et seq.,* that EDEN believes are occurring at the Colusa County Stonyford Landfill facility
located at 2 Miles South of Stonyford in Colusa, California ("the Facility" or "the site").

2151 Salvio Street #A2-319      Concord, CA  94520
Telephone:  925-732-0960      Email:  *edenvcitizens@gmail.com*
Website: **edenenvironmental.org**

EDEN is an environmental citizen's group established under the laws of the State of California to protect, enhance, and assist in the restoration of all rivers, creeks, streams, wetlands, vernal pools, and tributaries of California, for the benefit of its ecosystems and communities.

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), a citizen must give notice of intent to file suit. 33 U.S.C. § 1365(b). Notice must be given to the alleged violator, the U.S. Environmental Protection Agency ("EPA"), and the State in which the violations occur.

As required by CWA section 505(b), this Notice of Violation and Intent to File Suit provides notice to the Discharger of the violations which have occurred and continue to occur at the Facility. After the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, EDEN intends to file suit in federal court against the Discharger under CWA section 505(a) for the violations described more fully below.

## I.     THE SPECIFIC STANDARD, LIMITATION, OR ORDER VIOLATED

EDEN's investigation of the Facility has uncovered significant, ongoing, and continuous violations of the CWA and the General Industrial Storm Water Permit issued by the State of California (NPDES General Permit No. CAS000001 [State Water Resources Control Board ("SWRCB")] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Permit") and by Order No. 2014-0057-DWQ ("2015 Permit") (collectively, the "General Permit").

Information available to EDEN, including documents obtained from California EPA's online Storm Water Multiple Application and Reporting Tracking System ("SMARTS"), indicates that on or around June 25, 2015, the Discharger submitted a Notice of Intent ("NOI") to be authorized to discharge storm water from the Facility. The SWRCB approved the NOI, and the Discharger was assigned Waste Discharger Identification ("WDID") number 5S06I005372.

As more fully described in Section III, below, EDEN alleges that in its operations of the Facility, the Discharger has committed ongoing violations of the substantive and procedural requirements of the Federal Clean Water Act, California Water Code §13377; the General Permit, the Regional Water Board Basin Plan, the California Toxics Rule (CTR) 40 C.F.R. § 131.38, and California Code of Regulations, Title 22, § 64431.

## II.     THE LOCATION OF THE ALLEGED VIOLATIONS

### A.  The Facility

The location of the point sources from which the pollutants identified in this Notice are discharged in violation of the CWA is Colusa County Stonyford Landfill's permanent facility address of 2 Miles South of Stonyford in Colusa, California.

Colusa County Stonyford Landfill is a refuse and recycling collection, processing and disposal facility.  Facility operations are covered under Standard Industrial Classification Codes (SIC) 4953 (Refuse Systems).

Based on the EPA's Industrial Storm Water Fact Sheet for Sector N – Scrap Recycling and Waste Recycling Facilities, polluted discharges from operations at the Facility contain PCBs; heavy metals, such as zinc, copper, chromium, iron and aluminum; toxic metals, such as mercury, lead, arsenic and cadmium; total suspended solids ("TSS"); benzene, hydraulic fluids, battery acid, gasoline and diesel fuel, fuel additives, oil lubricants, brake and transmission fluids, chlorinated solvents, gasoline and diesel fuels; ethylene glycol; coolants; and oil and grease ("O&G").  Many of these pollutants are on the list of chemicals published by the State of California as known to cause cancer, birth defects, and/or developmental or reproductive harm.

Information available to EDEN indicates that the Facility's industrial activities and associated materials are exposed to storm water, and that each of the substances listed on the EPA's Industrial Storm Water Fact Sheet is a potential source of pollutants at the Facility.

### B.  The Affected Receiving Waters

The Facility discharges into Little Stony Creek, part of the Stony Creek Watershed, a tributary of the Sacramento River ("Receiving Waters").

The Sacramento River is a water of the United States.  The CWA requires that water bodies such as the Sacramento River meet water quality objectives that protect specific "beneficial uses." The Central Valley Regional Water Board has issued its *Water Quality Control Plan for the Sacramento and San Joaquin River Basins* ("Basin Plan") to delineate those water quality objectives.

The Basin Plan identifies the "Beneficial Uses" of water bodies in the region.  The Beneficial Uses for the Receiving Waters downstream of the Facility include: Municipal and Domestic Supply (MUN), Agricultural Supply (AGR), Industrial Process Supply (PRO), Industrial Service Supply (IND), Navigation (NAV), Water Contact Recreation (REC-1), Non-contact Water Recreation (REC-2), Warm Freshwater Habitat (WARM), Cold Freshwater Habitat (COLD), Wildlife Habitat (WILD), Migration (MIGR), and Spawning, Reproduction, and/or Early Development (SPWN).

A water body is impaired pursuant to section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d), when its Beneficial Uses are not being achieved due to the presence of one or more pollutants.

Polluted storm water and non-storm water discharges from industrial facilities, such as the Facility, contribute to the further degradation of already impaired surface waters, and harm aquatic dependent wildlife.

## III.   VIOLATIONS OF THE CLEAN WATER ACT AND GENERAL PERMIT

### A.   *Deficient/Invalid SWPPP or Site Map*

The Discharger's current Storm Water Pollution Prevention Plan ("SWPPP") for the Facility is inadequate and fails to comply with the requirements of the General Permit as specified in Section X of Order No. 2014-0057-DWQ, as follows:

(a) The SWPPP fails to discuss in specific detail Facility operations, including its SIC Code and hours of operations (Section X.D.2.d); or does not adequately indicate the Facility name and contact information (Section X.A.1);

(b) The SWPPP fails to include an adequate discussion of the Facility's receiving waters (Section XI.B.6(e), Section X.G.2.ix)

(c) The SWPPP fails to include an appropriate discussion of the Industrial Materials handled at the facility (Section X.F);

(d) The SWPPP fails to include an adequate description of Potential Pollutant Sources and narrative assessment of all areas of industrial activity with potential industrial pollutant sources, including Industrial Processes, Material Handling and Storage Areas, Dust and Particulate Generating Activities, Significant Spills and Leaks, Non-Storm Water Discharges and Erodible Surfaces (Section X.G.1);

(e) The SWPPP fails to include a narrative assessment of all areas of industrial activity with potential industrial pollutant sources, including the areas of the facility with likely sources of pollutants in storm water discharges and the pollutants likely to be present (Section X.G.2);

(f) The SWPPP fails to include an appropriate Monitoring Implementation Plan, including a discussion of Visual Observations, Sampling and Analysis and Sampling Analysis Reporting (Section XI);

(g) The SWPPP fails to include an appropriate discussion of drainage areas and Outfalls from which samples must be taken during Qualified Storm Events (Section XI);

(h) The SWPPP fails to include the appropriate sampling parameters for the Facility (Table 1, Section XI); and

(i) The SWPPP omits the date that it was initially prepared (Section X.A.10);

Failure to develop or implement an adequate SWPPP is a violation of Sections II.B.4.f and X of the General Permit.

### B. Failure to Develop, Implement and/or Revise an Adequate Monitoring and Reporting Program Pursuant to the General Permit

Section XI of the General Permit requires Dischargers to develop and implement a storm water monitoring and reporting program ("M&RP") prior to conducting industrial activities. Dischargers have an ongoing obligation to revise the M&RP as necessary to ensure compliance with the General Permit.

The objective of the M&RP is to detect and measure the concentrations of pollutants in a facility's discharge, and to ensure compliance with the General Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. An adequate M&RP ensures that BMPs are effectively reducing and/or eliminating pollutants at the Facility, and it must be evaluated and revised whenever appropriate to ensure compliance with the General Permit.

1. Failure to Conduct Visual Observations

Section XI(A) of the General Permit requires all Dischargers to conduct visual observations at least once each month, and sampling observations at the same time sampling occurs at a discharge location.

Observations must document the presence of any floating and suspended material, oil and grease, discolorations, turbidity, odor and the source of any pollutants. Dischargers must document and maintain records of observations, observation dates, locations observed, and responses taken to reduce or prevent pollutants in storm water discharges.

EDEN alleges that between July 1, 2015, and the present, the Discharger has failed to conduct monthly and sampling visual observations pursuant to Section XI(A) of the General Permit.

2.   Failure to Collect and Analyze the Required Number of Storm Water Samples

In addition, EDEN alleges that the Discharger has failed to provide the Regional Water Board with the minimum number of annual documented results of facility run-off sampling as required under Sections XI.B.2 and XI.B.11.a of Order No. 2014-0057-DWQ, in violation of the General Permit and the CWA.

Section XI.B.2 of the General Permit requires that all Dischargers collect and analyze storm water samples from two Qualifying Storm Events ("QSEs") within the first half of each reporting year (July 1 to December 31), and two (2) QSEs within the second half of each reporting year (January 1 to June 30).

Section XI.C.6.b provides that if samples are not collected pursuant to the General Permit, an explanation must be included in the Annual Report.

As of the date of this Notice, the Discharger has failed to upload into the SMARTS database system:

a.   Two storm water sample analyses for the time period July 1, 2015, through December 31, 2015;

b.   Two storm water sample analyses for the time period January 1, 2016, through June 30, 2016;

c.   Two storm water sample analyses for the time period July 1, 2016, through December 31, 2016;

d.   Two storm water sample analyses for the time period January 1, 2017, through June 30, 2017;

e.   Two storm water sample analyses for the time period July 1, 2017, through December 31, 2017;

f.   Two storm water sample analyses for the time period January 1, 2018, through June 30, 2018; and

g.   Two storm water sample analyses for the time period July 1, 2018, through December 31, 2018.

### C. *Falsification of Annual Reports Submitted to the Regional Water Board*

Section XXI.L of the General Permit provides as follows:

**L. Certification**

Any person signing, certifying, and submitting documents under Section XXI.K above shall make the following certification:

"I certify under penalty of law that this document and all Attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system or those persons directly responsible for gathering the information, to the best of my knowledge and belief, the information submitted is, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

Further, Section XXI.N of the General Permit provides as follows:

**N. Penalties for Falsification of Reports**

Clean Water Act section 309(c)(4) provides that any person that knowingly makes any false material statement, representation, or certification in any record or other document submitted or required to be maintained under this General Permit, including reports of compliance or noncompliance shall upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than two years or by both.

On July 15, 2016; July 13, 2017; and July 16, 2018, the Discharger submitted its Annual Reports for the Fiscal Years 2015-17, 2016-17 and 2017-2018, respectively. These Reports were signed under penalty of law by Michael Azevedo. Mr. Azevedo is the currently designated Legally Responsible Person ("LRP") for the Discharger.

Mr. Azevedo responded "Yes" to Question No. 3 on all three of the Annual Reports ("Did you sample the required number of Qualifying Storm Events during the reporting year for all discharge locations, in accordance with Section XI.B?") However, as discussed above, the Discharger failed to collect and analyze *any* of the required storm water samples during either the 2015-16, 2016-17 or the 2017-18 reporting years.

Based on the foregoing, it is clear that Mr. Azevedo made false statements in the Facility's 2015-16, 2016-17 and 2017-18 Annual Reports when he indicated that the facility had collected samples according to Section XI.B of the General Permit.

### D. *Deficient BMP Implementation*

Sections I.C, V.A and X.C.1.b of the General Permit require Dischargers to identify and implement minimum and advanced Best Management Practices ("BMPs") that comply with the Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements of the General Permit to reduce or prevent discharges of pollutants in their storm water discharge in a manner that reflects best industry practice, considering technological availability and economic practicability and achievability.

EDEN alleges that the Discharger has been conducting industrial activities at the site without adequate BMPs to prevent resulting non-storm water discharges. Non-storm water discharges resulting from these activities are not from sources that are listed among the authorized non-storm water discharges in the General Permit, and thus are always prohibited.

The Discharger's failure to develop and/or implement adequate BMPs and pollution controls to meet BAT and BCT at the Facility violates and will continue to violate the CWA and the Industrial General Permit each and every day the Facility discharges storm water without meeting BAT and BCT.

*Specific BMP Deficiencies*

On October 2, 2018, the Facility was inspected by the County of Colusa, as Local Enforcement Agency for CalRecycle, pursuant to the Facility's Solid Waste Facility Permit.

During the October 2, 2018, inspection, the LEA inspector observed several areas of the landfill where the Intermediate Cover of compacted earthen materials was less than the require twelve inches to control vectors, fires, odors, blowing litter and scavenging, in violation of 27 CCR 20700.

## E. *Discharges In Violation of the General Permit*

Except as authorized by Special Conditions of the General Permit, Discharge Prohibition III(B) prohibits permittees from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. Unauthorized non-storm water discharges must be either eliminated or permitted by a separate NPDES permit.

Information available to EDEN indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges.

EDEN alleges that the Discharger has discharged storm water containing excessive levels of pollutants from the Facility to its Receiving Waters during at least every significant local rain event over 0.1 inches in the last five (5) years.

EDEN hereby puts the Discharger on notice that each time the Facility discharges prohibited non-storm water in violation of Discharge Prohibition III.B of the General Permit is a

separate and distinct violation of the General Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

The Discharger may have had other violations that can only be fully identified and documented once discovery and investigation have been completed. Hence, to the extent possible, EDEN includes such violations in this Notice and reserves the right to amend this Notice, if necessary, to include such further violations in future legal proceedings.

The violations discussed herein are derived from eye witness reports and records publicly available. These violations are continuing.

## IV.    THE PERSON OR PERSONS RESPONSIBLE FOR THE VIOLATIONS

The entities responsible for the alleged violations are Colusa County Stonyford Landfill, as well as employees of the Discharger responsible for compliance with the CWA.

## V.    THE DATE, DATES, OR REASONABLE RANGE OF DATES OF THE VIOLATIONS

The range of dates covered by this 60-day Notice is from at least July 1, 2015, to the date of this Notice. EDEN may from time to time update this Notice to include all violations which may occur after the range of dates covered by this Notice. Some of the violations are continuous in nature; therefore, each day constitutes a violation.

## VI.    CONTACT INFORMATION

The entity giving this 60-day Notice is Eden Environmental Citizen's Group ("EDEN").

Aiden Sanchez
EDEN ENVIRONMENTAL CITIZEN'S GROUP
2151 Salvio Street #A2-319
Concord, CA  94520
Telephone:  (925) 732-0960
Email:  Edenenvcitizens@gmail.com  (emailed correspondence is preferred)
Website: edenenvironmental.org

EDEN has retained counsel in this matter. To ensure proper response to this Notice, all communications should be addressed to EDEN's General Counsel, Hans W. Herb.

HANS W. HERB
Law Offices of Hans W. Herb
P.O. Box 970
Santa Rosa, CA  95402

Telephone:  (707) 576-0757
Email:  hans@tankman.com

### VII.    RELIEF SOUGHT FOR VIOLATIONS OF THE CLEAN WATER ACT

As discussed herein, the Facility's discharge of pollutants degrades water quality and harms aquatic life in the Receiving Waters.  Members of EDEN live, work, and/or recreate near the Receiving Waters.  For example, EDEN members use and enjoy the Receiving Waters for fishing, boating, swimming, hiking, biking, bird watching, picnicking, viewing wildlife, and/or engaging in scientific study.  The unlawful discharge of pollutants from the Facility impairs each of these uses.

Further, the Facility's discharges of polluted storm water and non-storm water are ongoing and continuous.  As a result, the interests of EDEN's members have been, are being, and will continue to be adversely affected by the failure of the Discharger to comply with the General Permit and the Clean Water Act.

CWA §§ 505(a)(1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for un-permitted discharges of pollutants.  33 U.S.C. §§ 1365(a)(1) and (f), §1362(5).

Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Clean Water Act subjects the violator to a penalty for all violations occurring during the period commencing five (5) years prior to the date of the Notice Letter.  These provisions of law authorize civil penalties of $37,500.00 per day per violation for all Clean Water Act violations after January 12, 2009, and $51,570.00 per day per violation for violations that occurred after November 2, 2015.

In addition to civil penalties, EDEN will seek injunctive relief preventing further violations of the Clean Water Act pursuant to Sections 505(a) and (d), 33 U.S.C. § 1365(a) and (d), declaratory relief, and such other relief as permitted by law.  Lastly, pursuant to Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), EDEN will seek to recover its litigation costs, including attorneys' and experts' fees.

### VIII.    CONCLUSION

The CWA specifically provides a 60-day notice period to promote resolution of disputes.  EDEN encourages the Discharger's counsel to contact EDEN's counsel within 20 days of receipt of this Notice to initiate a discussion regarding the violations detailed herein.

During the 60-day notice period, EDEN is willing to discuss effective remedies for the violations; however, if the Discharger wishes to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated soon so that they may be completed before the end of the 60-day notice period. EDEN reserves the right to file a lawsuit if discussions are continuing when the notice period ends.

Very truly yours,


AIDEN SANCHEZ
Eden Environmental Citizen's Group

Copies to:

Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Regional Administrator
U.S. EPA – Region 9
75 Hawthorne Street
San Francisco, CA, 94105

Executive Director
State Water Resources Control Board
P.O. Box 100
Roseville, CA 95812-0100